CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 0 8 2008

JOHN F. CORCORAN, CLERK
BY:
  DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SHAWN TAYLOR, ) | |
| Plaintiff, ) | Civil Action No. 7:06CV00467 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| COUNTY OF PULASKI., et al., ) | By: Hon. James C. Turk |
| Defendants. ) | Senior United States District Judge |

Plaintiff Taylor claims in Count One of the Amended Complaint ("Complaint") that the defendants[1] subjected him to a racially hostile work environment while employed by the County and the Authority to load and unload garbage trucks, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq; 42 U.S.C. § 1981; and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution (via 42 U.S.C. § 1983). In addition, Taylor alleges that the defendants retaliated in response to his complaints and this lawsuit–first through a suspension (Count Two of the Complaint) and subsequently by termination of employment (Count Three of the Complaint)–in violation of Title VII, § 1981, and the First Amendment of the United States Constitution (via the Fourteenth Amendment and § 1983). Defendants moved for summary judgment on July 18, 2008, Taylor opposed on August 15, 2008, and the court heard oral arguments on August 29, 2008, making the matter ripe for disposition. Upon review of the parties' submissions, and for the reasons set forth below, the court will grant the motion in part and deny it in part.

---

[1] The defendants are the County of Pulaski ("the County"), the Pulaski County Public Service Authority ("the Authority"), Ronald Nichols, Kenneth Stoots, and Peter Huber. The three individual defendants were supervisors of plaintiff Taylor at times relevant to events alleged in the complaint.

-1-

## I. Statement of the Case

Taylor alleges that defendants failed to address the racist behavior of Kenny McPeak, a white garbage truck driver, towards himself and other black employees, creating a racially-hostile work environment. (Complaint, ¶¶ 16-18).[2] Taylor claims that McPeak had a practice of refusing to work with Taylor and other black employees that loaded and unloaded the garbage trucks. (S.J. Mem. in Opp. at 2-3). On November 15, 2004, McPeak specifically questioned Taylor about his racial background. (Id. at 3; S.J. Mem. in Sup. at 7-8). When Taylor replied that his mother was black and father was white, McPeak called Taylor the "n-word" and stated that he would not work with him. (Ex. 1 to S.J. Mem. in Opp., Taylor Tr. at 26-27; S.J. Mem. in Sup. at 5).[3] Taylor complained to Stoots and Nichols that day, and then filed a grievance with Huber–the Authority's executive director–on November 17, 2004. (S.J. Mem. in Opp. at 3; S.J. Mem. in Sup. at 5). The same day

---

[2] Though the Complaint also references racist behavior by unnamed "others" (Complaint, ¶ 17), plaintiff's briefing regarding a hostile work environment focuses solely upon the actions of McPeak and the individual defendants' claimed failure to remedy the situation. In his Answers to Interrogatories, Taylor does assert that Lane Penn–who replaced Stoots as Taylor's direct supervisor and is not named as a defendant– "retaliated" against him, but this conduct only implicates Count Three's claim. (See Ex. 7 to S.J. Mem. in Opp., Taylor Ans. to Interogs., ¶ 1).

[3] In addition to the use of a racial epithet by McPeak on November 15, 2004 and McPeak's claimed practice of refusing to work with black employees, Taylor raises two other specific actions by McPeak as contributing to the racially hostile environment. First, at an unspecified time, Taylor asserts that McPeak carved the initials "KKK" into the trailer porch where employees clocked in and received their work assignments for the day. (S.J. Mem. in Opp. at 4). Second, and also at an unspecified time, Taylor was present during a conversation between McPeak and another black employee where McPeak threatened to kill the employee if he came around McPeak's land, using racially charged language. (Ex. 1 to S.J. Mem. in Opp., Taylor Tr. at 59-60).

that Taylor filed his grievance, he also was suspended.[4] (S.J. Mem. in Sup. at 8). Defendants claim that the suspension was due to a pattern of disruptive work behavior during 2004, culminating with his use of abusive language towards Stoots and Nichols regarding a dispute about pay. (Id. at 7-8).

Taylor filed a timely charge of discrimination with the Virginia Council on Human Rights and the Equal Employment Opportunity Commission ("EEOC"), and received a right-to-sue letter in June 2006. (Complaint, ¶¶ 13-14). Taylor then filed his original complaint in this action on August 3, 2006. On June 11, 2007, Taylor served his Answers to Interrogatories. (Ex. 7 to S.J. Mem. in Opp.). On June 21, 2007, Taylor had a confrontation with Penn, which led to his official termination from employment on July 6, 2007. (S.J. Mem. in Sup. at 8; S.J. Mem. in Opp. at 5-7). Taylor claims that the termination was in retaliation for his complaints and lawsuit, and that subsequent events show that the stated reasons for his termination were pretextual. (S.J. Mem. in Opp. at 6-8). A grievance panel upheld the County's actions regarding Taylor's termination. (S.J. Mem. in Sup. at 8).

## II. Jurisdiction and Standard of Review

This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, and 1343. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this

---

[4] It is unclear from the record whether, on November 17, Taylor was suspended before or after filing his formal grievance.

-3-

Case 7:06-cv-00467-JCT    Document 27    Filed 10/08/08    Page 3 of 13    Pageid#: 238

determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

### III. Analysis

#### A. Count One: Hostile Work Environment

To survive a motion for summary judgment on a claim of a racially hostile work environment, a plaintiff must demonstrate that a reasonable jury could find the harassment: (1) unwelcome; (2) based on race; (3) severe or pervasive enough to alter the conditions of employment and create an abusive atmosphere; and (4) that there is some basis for imposing liability on the defendants. Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183-84 (4th Cir. 2001).[5] An affirmative defense is available to employers that "can demonstrate, by a preponderance of the evidence, that (1) [they] 'exercised reasonable care to prevent and correct promptly any harassing behavior'; and (2) the plaintiff 'unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" Id. at 186 (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998 ).

Defendants do not challenge that the harassment was unwelcome and based upon race. As for the third element of Taylor's prima facie case, the court finds that genuine issues of material fact exist regarding whether McPeak's behavior and the individual defendants' responses as supervisors were "sufficiently severe or pervasive to alter the conditions of employment and create an abusive

---

[5] "The elements are the same under either § 1981 or Title VII." Spriggs, 242 F.3d at 184 (citing Causey v. Balog, 162 F.3d 795, 804 (4th Cir. 1988)). The court notes, however, that defendants made no argument regarding Taylor's alleged Equal Protection Clause cause of action for a racially-hostile working environment, and therefore the court will not address this claim.

-4-

atmosphere." Id. at 183. The "[n-word] is pure anathema to African-Americans." Id. at 185.[6] In addition to McPeak's specific conduct towards Taylor, there is also evidence that defendants tolerated McPeak's behavior for an extended period of time towards Taylor and other black workers. See id. at 184 ("Although [the defendant] contends that conduct targeted at persons other than [the plaintiff] cannot be considered, its position finds no support in the law. We are, after all, concerned with the 'environment' of workplace hostility . . . ."). As for the fourth element of the Spriggs analysis, it is clear that under Title VII, liability may only be imposed against "employers;" therefore, the court will grant the summary judgment motion for this cause of action, with respect to the individual defendants. See 42 U.S.C. §§ 2000e(a-b), 2000e-2(a), 2000e-3(a); Lissau v. Southern Food Serv., 159 F.3d 177, 181 ("[S]upervisors are not liable in their individual capacities for Title VII violations.").[7]

The court also finds that neither the County nor the Authority may take advantage of the affirmative defense articulated in Spriggs. A jury could reasonably conclude that despite the assignment of a black employee, Oscar Sherman, to McPeak's truck in January 2005 after Taylor's grievance, the County and Authority did not "exercise[] reasonable care to prevent and correct promptly any harassing behavior."[8] It is undisputed that Sherman was only placed on McPeak's truck for a short period of time–from January 2005 until "spring 2005." (S.J. Mem. in Sup. at 5).

---

[6] Similarly offensive would be McPeak's carving of "KKK" into a workplace structure.

[7] Without briefing from the parties, the court declines to reach the question of whether an individual defendant could be liable under § 1981.

[8] There is no evidence, besides a conversation with Nichols after Taylor filed his grievance (S.J. Mem. in Sup. at 5), that McPeak received any other formal discipline for his behavior until he passed away.

-5-

And Sherman submitted a sworn declaration that he "requested to be moved to another truck, because of [McPeak's] hostility towards me." (Ex.10 to S.J. Mem. in Opp., Sherman Decl.). Given this evidence, neither the County nor the Authority may benefit from the affirmative defense on this motion for summary judgment.

### B. Count Two: Retaliation–Suspension

The parties agree that Title VII and § 1981 retaliation claims are governed under the burden-shifting scheme as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To establish a prima facie case, a plaintiff must show: (1) engagement in protected conduct; (2) a materially adverse employment action that might dissuade a reasonable worker from making a charge of discrimination; and (3) a causal connection between the protected activity and the adverse employment action. Lettieri v. Equant, Inc., 478 F.3d 640, 649-50 & n. 2 (4th Cir. 2007). "If the plaintiff establishes [a] prima facie case, the burden shifts to the employer . . . 'to articulate a legitimate, nondiscriminatory reason for the adverse employment action.'" Id. at 646 (quoting Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc); see also id. at 651 (applying the pretext analysis to retaliation claim). Next, "the burden returns to the plaintiff to show that 'the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination.'" Id. at 646 (quoting Hill, 354 F.3d at 285).

For purposes of this motion, defendants do not contest Taylor's ability to satisfy the first two elements of his prima facie case under McDonnell Douglas. (S.J. Mem. in Sup. at 7). However, contrary to defendants' arguments, Taylor has produced sufficient evidence on the third element–a causal connection between his complaints about McPeak's racist behavior, and his suspension. It is undisputed that he was suspended the same day he filed the grievance, and just two days after his

Case 7:06-cv-00467-JCT    Document 27    Filed 10/08/08    Page 6 of 13    Pageid#: 241

conversations with Stoots and Nichols. This close temporal proximity is sufficient to establish Taylor's prima facie case as to the third element. See Johnson v. Wheeling-Pittsburgh Steel Corp., Nos. 07-1015, 07-1127, 2008 U.S. App. LEXIS 10395, *11 (4th Cir. May 14, 2008).

Defendants have successfully articulated a "legitimate, nondiscriminatory reason for the adverse employment action"– that Taylor was suspended for a pattern of behavior in 2004, and for abusive language towards Stoots and Nichols on November 15 of that year– thus, shifting the burden back to Taylor. However, the court finds that Taylor has produced sufficient evidence to create a genuine issue of material fact with respect to whether the defendants' proffered justification is a pretext for discrimination. In addition to his strong prima facie case,[9] Taylor asserts that another supervisor told him that his suspension was not for the stated reasons, but because he was too loud in protesting McPeak's behavior. (S.J. Mem. in Opp. at 3-4; Ex. 7 to S.J. Mem. in Opp., Taylor Ans. to Interogs., ¶ 4). For these reasons, the court will deny the defendants' summary judgment motion with respect to the Title VII and § 1981 theories of recovery for Count Two.[10]

The court, however, will grant defendants' motion with respect to Taylor's retaliation cause of action arising under the Constitution. Taylor also claims that the suspension was in response to exercising his First Amendment right to free speech, a claim cognizable under § 1983. "In assessing whether particular speech is protected by the First Amendment, the court considers '(1) whether a

---

[9] See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 148-49 (2000) ("Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.").

[10] The court will grant the motion with respect to the Title VII claim against the individual defendants, as explained supra.

public employee's speech qualifies as a matter of public concern, and (2) what effect the speech has on the efficiency, discipline and proper administration of the workplace.'" Holland v. Rimmer, 25 F.3d 1251, 1254 (4th Cir. 1994) (quoting Dwyer v. Smith, 867 F.2d 184, 193 (4th Cir. 1989)). However, if the speech fails the first inquiry and "cannot be characterized as 'relating to any matter of political, social, or other concern to the community,' the court's inquiry ends there." Id. at 1254-55 (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)). The determination of whether the speech in question is a matter of public concern is a question of law for the court, and "should be made by examining the 'content, form and context of a given statement, as revealed by the record as a whole.'" Id. at 1255 (quoting Connick, 461 U.S. at 147-48). The court finds as a matter of law that Taylor's speech leading up to his suspension is not a matter of public concern.

Taylor's complaints about McPeak's actions leading to his suspension are "more properly viewed as essentially a 'private' matter between employer and employee." Berger v. Battaglia, 779 F.2d 992, 999 (4th Cir. 1985). Taylor claims that he was suspended because of his complaints about McPeak's use of a racial epithet towards him in November 2004. Despite raising the specter of racial discrimination,[11] the court find that under Fourth Circuit precedent, this alone is insufficient to establish that the speech in question related to a matter of public concern.

Taylor argues that he was suspended "[s]hortly after he complained about Mr. McPeak's refusal to work with him on account of his race." (S.J. Mem. in Opp. at 3) (emphasis added). Thus,

---

[11] Connick included a footnote stating that "racial discrimination" is "a matter inherently of public concern." 461 U.S. at 148 n.8. While charges of racial discrimination merit special scrutiny, the court considers the statement in Connick to be dicta. See also Cromer v. Brown, 88 F.3d 1315, 1326 (4th Cir. 1996) (stating that, standing alone, allegations of race discrimination within a law enforcement agency are "matters of serious public import," but requiring more before finding that a plaintiff's speech was a matter of public concern).

by plaintiff's own admission, the speech that led to his suspension was focused upon his own work circumstances, not the public at large. This personal focus distinguishes the speech that forms the basis of Taylor's claims from that in Cromer v. Brown, 88 F.3d 1315 (4th Cir. 1996) and Love-Lane v. Martin, 355 F.3d 766 (4th Cir. 2004), two cases upon which Taylor chiefly relies.

In Cromer, the Fourth Circuit found that by joining an association of black police officers, the plaintiff police captain spoke on matters of public concern when the association distributed a letter of racial grievances to the defendant sheriff. 88 F.3d at 1325-26. The association's "specific complaints prompted an expression of concern about the inability of the sherriff's office to carry out its vital public mission effectively," and therefore in the letter, members of the association "spoke as citizens, not merely as employees." Id. (citing Connick, 461 U.S. at 147). Here, unlike in Cromer, Taylor's speech is that "of a single disgruntled employee about a personal employment dispute." Id. at 1326 (citing Connick, 461 U.S. at 148).

Similarly, for the Love-Lane plaintiff (an elementary school administrator) the First Amendment speech in question was her complaints about the allegedly racially discriminatory practices at the school against black students, not against herself personally. 355 F.3d at 770-77 ("The content or subject matter of Love-Lane's speech dealt with disciplinary practices at [the school] that discriminated against African American children."). Therefore, the "speech did not relate to a private issue between Love-Lane and her employer. Rather, the summary judgment record demonstrates that it dealt with an issue of major concern to many in the [] school community, including teachers, parents, and students." Id. at 777. Commensurate public focus is absent from Taylor's claims.

Because the speech that Taylor claims led to his suspension was not a matter of public

-9-

concern, the court grants defendants' summary judgment motion as to Count Two, with respect to the First Amendment theory of liability.

## C. Count Three: Retaliation–Termination[12]

Plaintiff's retaliation claims regarding his termination are governed by the same standards elucidated above for his suspension claims. With respect to Taylor's causes of action arising under Title VII and § 1981, the defendants again concede for purposes of their motion that Taylor can satisfy the first two elements of his prima facie case under McDonnell Douglas. As for the third element, the court finds that there is sufficient evidence of a causal connection between Taylor's complaints (including this lawsuit) and his termination to establish a prima facie case of retaliation. Though over two and a half years separate Taylor's initial 2004 complaints and the events leading to his termination, the court–drawing all inferences in Taylor's favor as the non-movant–finds that there is a close enough temporal proximity between the 2007 events surrounding Taylor's termination and service of his Answers to Interrogatories[13] in this case to create a prima facie case.[14]

Defendants again successfully "articulate a legitimate, nondiscriminatory reason for the adverse employment action," claiming that Taylor:

used offensive, abusive, coercive, and discourteous language in a conversation with

---

[12] The court will grant the summary judgment motion as to Count Three for individual defendant Stoots. By plaintiff's own account, Stoots was replaced by Penn as Taylor's supervisor before the events that form the basis of Taylor's claim in Count Three, (S.J. Mem. in Opp. at 5), and plaintiff has put forth no evidence that Stoots was even tangentially involved with his termination.

[13] In these Answers, Taylor stated his knowledge about the claimed retaliatory motive for his suspension, among other matters.

[14] As discussed supra, Taylor's confrontation with a supervisor occurred on June 21, he was terminated July 6, and his Answers to Interrogatories were served on June 11.

-10-

> Mr Penn, his supervisor. As he left the building, [Taylor] made comments to co-workers which were overheard by Mr. Penn which were both disrespectful and physically threatening. In light of Plaintiff's previous history, Defendants believed that they had no choice other than to terminate his employment.

(S.J. Mem. in Sup. at 8). However, the court again finds that Taylor has produced sufficient evidence to create a genuine issue of material fact with respect to whether the defendants' proffered justification is pretext. Huber–in his capacity as the Authority's executive director–made the decision to fire Taylor after the June 21, 2007 incident. Even though Taylor was directly speaking to co-worker Robert Williams, and in the presence of co-worker George Hazel, when Taylor allegedly threatened Penn, statements from these two individuals were not part of the initial investigative report. (S.J. Mem. in Opp. at 5-7). And although Taylor later brought both Williams and Hazel in to speak with Huber before Taylor's termination became final, Huber discounted their statements in part because they were verbal instead of written. (Ex 2 to S.J. Mem. in Opp., Grievance Tr. at 67, 72, 96-97).[15] This, coupled with Huber's shifting justifications for Taylor's termination, (S.J. Mem. in Opp. at 6-8), is sufficient to create a genuine issue of fact as to whether the defendants' given justification for Taylor's termination is a pretext. See EEOC v. Sears Roebuck & Co., 243 F.3d 846, 852-53 (4th Cir. 2001) (offering of different justifications at different times is probative of pretext). For these reasons, the court will deny the defendants' summary judgment motion with respect to the Title VII and § 1981 theories of recovery for Count Three.[16]

The court, however, will grant defendants' motion with respect to Taylor's retaliation cause

---

[15] Both Williams' and Hazel's account of the incident contradict the statements of Penn and others that Huber credited. (See Ex. 11 to S.J. Mem. in Opp., Williams Decl.; Ex 2 to S.J. Mem. in Opp., Grievance Tr. at 69, 96-97).

[16] The court will grant the motion with respect to the Title VII claim against the individual defendants, as explained supra.

-11-

of action arising under the First Amendment. Again, the court finds as a matter of law that Taylor's speech leading up to his termination is not a matter of public concern. Taylor specifically alleges that he was "terminated in retaliation for his EEOC charge, his protected speech protesting racism in the public work place, and the filing of this lawsuit." (Complaint, ¶ 27). The court has already found that Taylor's speech protesting racism is not a matter of public concern. As for his EEOC charge and this lawsuit, while Taylor does reference discrimination against other black employees, both overwhelmingly focus upon the conduct directed against Taylor and the harm that allegedly resulted to him. Viewing the record as a whole, the court finds as a matter of law that this speech is "more properly viewed as essentially a 'private matter' between employer and employee," Berger, 779 F.2d at 999, and is not a matter of public concern. Therefore, the court grants defendants' summary judgment motion as to Count Three, with respect to Taylor's First Amendment theory of liability.

## IV. Conclusion

For the stated reasons, defendants' summary judgment motion (Dkt. No. 18) will be **GRANTED** in part and **DENIED** in part. Count One is **GRANTED** with respect to the Title VII cause of action against defendants Stoots, Nichols, and Huber; and **DENIED** in all other respects. Count Two is **GRANTED** with respect plaintiff's § 1983 claim under the First Amendment; **GRANTED** with respect to the Title VII cause of action against defendants Stoots, Nichols, and Huber; and **DENIED** in all other respects. Count Three is **GRANTED** with respect to defendant Stoots; **GRANTED** with respect to plaintiff's § 1983 claim under the First Amendment; **GRANTED** with respect to the Title VII cause of action against defendants Nichols and Huber; and **DENIED** in all other respects.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to all counsel of record.

**ENTER**: This 7th day of October, 2008.

The Clerk is directed to send a copy of this opinion to all counsel of record.

/s/ James C. Turk
Senior United States District Judge